JOHN D. STEVENS *v.* YAZOO & MISSISSIPPI VALLEY RAIL-
ROAD COMPANY.

1. NEGLIGENCE. *Peremptory instruction.*

   " So many questions are integrated usually into the solution of the
   question of negligence—it is so necessary to examine all the circum-
   stances making up the solution in each case—that it must be a
   rare case of negligence that the court will take from the jury."

2. RAILROADS. *Excessive speed. Frequented place. Code* 1892, § 3546.

   When a railroad train running in a much frequented part of a city at a
   rate of speed much greater than that allowed by law (code 1892,
   § 3546) and, without giving any signals, strikes a pedestrian mov-
   ing in the direction in which the train is going, the railroad com-
   pany is guilty of recklessness amounting to wilfullness, and the
   party injured may recover without reference to whether he was
   rightfully or wrongfully on the track,

FROM the circuit court of, second district, Hinds county.
HON. ROBERT POWELL, Judge.

Stevens, appellant, was plaintiff in the court below, the rail-
road company appellee, was defendant there.    From a judg-
ment in defendant's favor plaintiff appealed to the supreme
court.    The facts are stated in the opinion of the court.

*Harper & Potter*, for appellant.

This action was brought by appellant to recover damages for
personal injuries received by him while walking near the track
of appellee from a train running at an unlawful speed in the
city of Jackson.    The tracks where he was walking when in-
jured, had been generally used as a pathway by the public in
that part of the town for twenty years.    This was known to
the company and acquiesced in by its officers.    Plaintiff knew
that the railroad was used at that place as a thoroughfare.

The mere fact that appellant went upon the track does not of itself amount to negligence, even had he been a naked trespasser. This is absolutely settled in this state, in the case of *Railway Company* v. *Carter*, 77 Miss., 511.

"The statute prohibiting rapid running in cities, towns and villages was designed to protect life and property, because of the known imprudence of the many who need protection against themselves." *V. & M. R. R. Co.* v. *McGowan*, 62 Miss., 682; *Fulmer* v. *Railway Co.*, 68 Miss., 355.

This question being settled by reason and authority in favor of appellant, it becomes a matter of extreme difficulty to discover wherein plaintiff failed to use the care and caution that a man of ordinary prudence would in this situation.

When placed in a position of peril no two reasonable men will necessarily act in the same manner, and it may be that the same reasonable person might not act in the same way on two different occasions, where the circumstances were the same.

Appellant shows that at the rate that he was walking (between three and four miles per hour) he was only able to travel eighteen or twenty steps before he was overtaken by the train that in the short time of ten seconds had traveled four hundred and sixty feet, or at a speed of about twenty miles an hour.

In such a situation and in so short a time to have stopped to mature a course of action that would be unassailable, would of itself be the very grossest negligence; he must act at once on his best judgment.

If the mere fact that a person erred and was injured be the criterion, the law would be without purpose, because if the judgment of men were infallible, there could be no accidents of this character.

The courts having seen that no man, however learned, can with absolute precision determine what a man of ordinary capacity and prudence would do in a given case, are disinclined to pass on such questions, and have determined that it shall ordinarily be a question of fact for the determination of men

of ordinary capacity and prudence, as they are found in the common walks of life, unless the facts are such that all reasonable men would be impelled to one irresistible conclusion that there had been a failure to act with reasonable prudence under the circumstances of the case. In the case at bar. the evidence shows that appellant was giving his full attention to his situation, and was never slothful or negligent, but when he left the track after seeing the train upon it, he feared that he might come in contact with engines or cars from the front, where he heard them moving and knew they were, and for the very few seconds that remained before the injury, he was watching in that quarter, from which he had a reason to apprehend danger. He shows that he was still mindful of the train that he thought was the Illinois Central Cannon Ball, and would have looked back and seen it in a second more, had he been mercifully allowed that very short time of preparation.

The track that he was approaching he believed to be a switch track, and on which he says he knew a passenger train would not go; which was a reasonable belief in view of the fact that the map and other evidence shows it to come into and connect with the main line as only switch tracks usually do, and this was an additional reason for prudence on the part of the railroad company.

We invite the court's critical attention to the recent case of *Law* v. *Missouri K. & T. R. R. Co.* (Texas), 25 Am. & Eng. R. Cases, 582 (N. S.), where the plaintiff was walking on the tracks of the company and was struck from his front. A strong wind was blowing that prevented his hearing the approaching train, and kept his hat blown down over his eyes; he had, however, looked up and seen that there was no danger in front from any train approaching at a lawful speed, and as he apprehended danger from the rear he was watching in that direction when he was run down by a train from the front. There were no signals given or precaution taken by the servants of the company.

In speaking on this subject, Sher. & Red. on Negligence say in sec. 477: "A person is not deprived of his remedy because when confused by a multiplicity of tracks and trains, or by noise and danger, he fails to see the particular train which injures him." His attention may be so diverted by that, quite consistent with due care and prudence, he may fail to look and listen at the proper time, and if so, his omission is excused.

When a want of care is relied upon as a defense, unless the evidence of contributory negligence is so plain and convincing that all reasonable men would draw the same inference from the facts adduced, it is a question of fact for the jury. *Nesbitt* v. *City of Greenville*, 69 Miss., 22; *Fulmer* v. *Railway Co.*, 68 Miss., 355; *Summers* v. *Railway Co.*, 68 Miss., 566; *Jobe* v. *Railway Co.*, 69 Miss., 452; *Railway Co.* v. *Turner*, 71 Miss., 402.

"So many questions are integrated usually with the solution of the question of negligence, it is so necessary to carefully examine all the circumstances making up the situation in each case that it must be a rare case of negligence which the court will take from the jury." *Bell* v. *Southern Ry. Co.* (Miss.), 24 Am. & Eng. R. Cases (N. S.), 67.

*Mayes & Harris*, for appellee.

The extreme to which appellant was driven in this case is demonstrated by the startling proposition urged in argument that the six mile statute was passed for the protection of trespassers. Could it be possible that it would be necessary for us to advert to the fact that laws are not passed for the benefit of wrong-doers, and rules of law are not established for their protection?

The rule as to trespassers remains unchanged and unaffected by this statute. The court has held that as to trespassers and to bare licensees the company owes no duty except not to wantonly and wilfully injure them, and to exercise due care to prevent injury where the trespasser has been discovered in a place of danger from which he can not extricate himself.

In the case at bar the plaintiff was a wrongdoer from the very start. He was in the switch yards of the railroad company at a time of day when he knew that trains were likely to be passing upon any track in that yard. He went there upon no sort of implied invitation from the railroad company, but simply for his own convenience.

This is not a case in which a party at a public crossing, where he has a right to be, is confused or misled by conditions which arise and sustains injury. It is not a case in which a party is rightfully at the place where he is injured, and the question as to whether he exercised due care or not arises, but it is a case where the party undertook a most hazardous journey on his own account and for his own convenience where he could, and should, have expected injury, and where that resulted which was most likely to result. He was unnecessarily on the track; he had left a place where he was perfectly safe, where he could not have been hit by any switch engine behind or before, and from which place of safety he should not have departed, and from which place of safety he should have looked out for himself before going upon the track of the railroad company. He was not in a position to indulge any presumption as to the movement of the train which hurt him. He knew the train was approaching him from behind; he knew that it was just as likely to be the Natchez train as any other train; he thought he was going on a sidetrack, but he was going on a main line.

This case presents no peculiar or intricate facts, and there is no case which has been cited by counsel in their brief which would warrant a reversal of this case, and there is no principle cited from the text writers based upon any decisions, so far as we have been able to find, which bear out or support the contention of counsel for the appellant. It is an attempt on their part to have the court override in this particular case those principles which have been long established and recognized in this court, and should be recognized in all courts of justice,

and that is, that where there is a case, as here, of contributory negligence on the part of the plaintiff, a recovery should be denied.

Counsel for appellant has relied upon the following decisions in this state.

1. *Fulmer* v. *R. R. Co.*, 68 Miss., 355. That case is absolutely inapplicable to the case at bar, because in that case, Fulmer was run over by a car making a flying switch over a public crossing on which Fulmer was at the time he was killed.

2. *Summers* v. *R. R. Co.*, 68 Miss., 566, is a case in which a woman walking on what was known to be and admitted to be a switch or sidetrack, and who had seen a train pass down on the main line going beyond her, was struck by a cut of cars thrown in on the switch from the train which had passed her, and the court held it was a question of fact whether, under the circumstances, she was guilty of contributory negligence. She had seen the train passing beyond her going in a different direction from the one in which she was going, but this train, after going some distance beyond the plaintiff, threw in a cut of cars on the sidetrack on which she was walking, and she was killed. The admitted fact was, that she was on a not-used dummy track and near a public crossing, and was killed by a flying switch.

3. *Jobe* v. *R. R. Co.*, 69 Miss., 452, is certainly not authority to support the plaintiff, because this court held Jobe was guilty of contributory negligence, although he was at the time at a public crossing.

4. *Nesbitt* v. *R. R. Co.*, 69 Miss., 224, is a case where the injured party sat down in the shade of a water tank, apparently safe, and the tank fell and he was injured.

5. The case of *Bell* v. *So. R. R. Co.*, 24 Am. & Eng. Ry. Cases, harped on by counsel for appellant, was a case where a party was on the tracks of the railroad company by implied invitation, and was expressly held by the court, unloading coal

from a car which had been placed there for the purpose of being unloaded at that place.

6. The case of *Turner* v. *R. R. Co.*, 71 Miss., 402, is similar to the *Summers case.*

7. The *Hasie case*, 78 Miss., 413, is a case where Hasie went on a bridge where he had a right to be, not a trespasser, and was injured by a train which he did not see when he went on the bridge, and the court held he had a right to presume the train crew would obey the statute. In other words, the case was reversed because the court below refused to instruct that he had a right to indulge this presumption.

8. In the *Carter case*, 77 Miss., 511, Carter was not on the railroad track, and had not been on it. He was in a path by the side of the track, long used by pedestrians with the knowledge of the company. He was not guilty of any negligence at all. He was struck by something protruding from the train over the track.

9. *Lowe* v. *R. R. Co.*, 73 Miss., 203, was a case of an injured party at a public crossing, where a party who was rightly there was suddenly arrested by the appearance of some bears which startled her and caused her to remain a few seconds, during which time the approaching train struck her.

It is not necessary to analyze the cases cited by appellant further. They are wholly inapplicable to the case at bar. These cases were all correctly decided and depended upon principles which do not arise here at all.

The appellant certainly can get no comfort from the citation from Sher. & R. on Negligence, sec. 744, in reference to a person who becomes confused by a multitude of trains and tracks.

By referring to the text, the court will see that the author is treating of the duty of persons at public crossings, places where they have a right to be.

The following cases are cited in support of the text, all of which we have carefully examined, and we set them out in or-

der that the court may refer to them conveniently: 67 N. Y.; 417; 22 Hun., 56; 89 Pa. St., 59; 66 Mich., 261; 157 Ill., 595; 100 Ill., 603; 88 N. Y., 13; 110 N. Y., 636.

In all of these cases the party injured was at a public crossing, and was misled by the action of the trains at the time of the injury. Many of the parties injured were minors, some children not over eight years of age. None of them were trespassers; none of them were at places where they had no right to be, but they were traveling along the highway, and the question was, whether, in the particular case, they had exercised such care and prudence as they should have done under the circumstances, and these questions of fact were left to the jury.

Another thing which the court must bear in mind in this case is, not only did the plaintiff leave a place of safety, but he walked rapidly on to the track, and was almost immediately struck by the train. He was not at a place where he could not get out of danger if he had exercised ordinary prudence. He could have stepped easily off the track; it was not necessary for him to go on the track, and if he had been seen on the main track of the Illinois Central, or in the space between the tracks, by parties operating the train, they would have had a right to presume that he would not rush on to the track in front of the train which was approaching, in full view, and which he had already seen. This court has decided that under conditions of this sort, where a party can see and is in a position to protect himself from danger by the exercise of ordinary prudence, he must see and protect himself accordingly. The court fully recognizes this doctrine in the case of *Murdoch* v. *R. R. Co.*, 75 Miss., 487.

Where a person, without negligence on his part, has gotten himself into an intricate situation at a place where he has a right to be, where danger suddenly comes upon him, is one case, but where a party is in a place where he has no right to be, and has voluntarily and unnecessarily placed himself in a position of danger, is quite a different one.

The plaintiff was not only a trespasser, but negligent in this case in undertaking a perilous journey through the railroad company's yards at an hour of the day when he knew that all the trains were coming in and going out of the city. He does not stand in an attitude to berate the railroad company because he received an injury.

It was incumbent upon him not to exercise merely ordinary prudence, but the highest degree of care, under the circumstances.

The railroad company was under a duty to abstain from any wilful injury to him and nothing more. There is no evidence in the case which could sustain a claim of wilful wrong on the part of the railroad company. The case made by the plaintiff himself shows that there could not be anything savoring of intentional wrong. He was not walking down the track in front of the train; he was not on the track on which the train was approaching; he went from a place of safety into a place of danger, of his own accord, without looking to see whether he was safe or not. The fact that he made a miscalculation, or made a mistake under these conditions, does not relieve him; he could have saved himself if he had remained in the space between the tracks, as he should have done. The railroad company did nothing to mislead him; he was entirely to blame for getting himself into a condition of confusion. When he got upon the track in front of the train, he was a trespasser, and the railroad company was under no duty except to abstain from wilful or wanton injury, and, as before stated, the facts of this case do not warrant a finding of wilful injury.

The rate of speed being in excess of that provided by law, was negligence, and simply negligence. If not, then the court cannot support its decision, as we have above stated, in numerous cases with which the books are filled—the *Winterton case,* the *Crockett case,* the *Jobe case,* the *Murdoch case,* and other cases too numerous to mention.

The plaintiff was a wrongdoer, and the law was not passed

to protect wrongdoers, and it is an absurd position for coun-
sel to assume that this court is going to hold that the object of
the statute was to protect wrongdoers and trespassers.

Argued orally by *W. H. Potter*, for appellant, and by *J. B.
Harris*, for appellee.

CALHOON, J., delivered the opinion of the court.

The cause went off below on a peremptory charge of the
learned circuit judge to the jury to find for defendant on the
testimony for plaintiff.    It follows that, in our view of it, we
are to be controlled by a solution of the question whether a
verdict for the plaintiff on that testimony would be permitted
to stand.    On that the jury would have been warranted in be-
lieving the following : The union passenger railroad depot of
the city of Jackson is situated just north of Capitol street,
which runs east and west, and crossing the railroad.    The next
street south is Pearl, and the next south of that is Pascagoula,
and the next south of that is South street.    These streets are 320
feet apart.    The main track of the Illinois Central Railroad
runs straight north and south, crossing all these streets.    The
Yazoo & Mississippi Valley Railroad Company habitually used
this main track going south until it arrived at a point about
midway between  Pearl and Pascagoula streets, at which point,
by a switch arrangement, its passenger trains left the main
track, and went on its own separate track, running thence due
south to a point about halfway between Pascagoula and South
streets, when it diverged southwest on its way to Natchez.
Divers railroad tracks and switch tracks, running north and
south, cross Pascagoula street, and just south of Pascagoula
street, and between that and South street, the ground is practi-
cally gridironed with switch tracks; and all this is in a populous
and much frequented quarter of the city, and much used by
pedestrains, and has been so used for 20 years to the knowledge
of the railroad company.    Early in the afternoon Mr. Stevens
was on his way to a factory.    He had come from the eastern

part of the city, going west on Pascagoula street.   When he
reached the railroad crossing his route led south and a little
west of south to the factory, which was the point of his desti-
nation.   On reaching the main line of the Illinois Central
Railroad where it crosses that street, Mr. Stevens looked up
the line, and saw a passenger train moving south, which he took
to be what is ordinarily known as the ''Cannon Ball'' train of
the Illinois Central Railroad Company.   When he saw it, it
was just at Pearl street, 320 feet north of where he was.   He
walked across that main track of the Illinois Central Railroad
Company, and, of course, believed himself to be, and was,
absolutely out of all danger from that train if it had continued
down the main line.   When he got across that main line, he
was immediately disturbed by the movements of switch engines
and cars in the switch yards south of him, in which direction
he was going, and, to avoid danger from them, he was on the
alert to watch their movements.   He had thought that the
point of deflection from the Illinois Central main line into the
Yazoo & Mississippi Valley line was to his south at a point
about midway between Pascagoula and South streets, which
was a mistake.   Now, while watching the switch engines in his
front, he pursued his course a little west of south, fronting the
switch engines, from which only there seemed to him any possi-
ble danger, and got to the eastern side, at the crossties of the
railroad track of the Yazoo & Mississippi Valley Railroad
Company.   If he had stopped in the space between the two
tracks he would have been perfectly safe, but, observing the
instinct of men when a train is coming down a track, he got as
far away from the Illinois Central main line as possible, and
was, as we have said, at the eastern end of the crossties on the
Yazoo & Mississippi Valley track.   He was watchful and alert,
to the best of his judgment, all the time, to avoid danger.
His back was towards the north—towards the depot, from
which the train was coming—when the Yazoo & Mississippi
Valley train, without ringing a bell or blowing a whistle, ran

on him, and inflicted injuries which will greatly impair, if not destroy, his usefulness through life. One sharp blow of the whistle would, no doubt, prevented any casualty. The speed of the train which struck him is put by one witness at the rate of from 10 to 15 miles an hour ; another, at 12 miles an hour ; and a fair deduction from the testimony of the plaintiff himself would put it at from 20 to 22 miles an hour ; and this, as we have said, in a very populous neighborhood, in the heart of the city, in a place much frequented by the people. If the train which did the damage to this man had been going at the lawful rate of speed of six miles an hour, it is plain that the catastrophe would not have occurred, because, by the time the train could have gotton to him he would have been at an entirely safe place. He had the right to suppose, and did suppose, that the southbound train was not traveling faster than the limit prescribed by law, in which case he was in no sort of danger. But if he had not supposed so, the fact remained that the speed was at least twice that of the lawful limit. As soon as he got his bearings as to danger from the switch engines in his front to the south—and he says in a second—he would have looked back north for any danger from any train from that quarter, it being the time of day for trains to move out from the depot. While the writer dissented from the conclusion of the court in *Bell* v. *Railroad Co.*, 30 South., 821, he and the whole court subscribed then, and subscribe now, to the language of Chief Justice Whitfield in that case, that : "So many questions are integrated usually into the solution of the question of negligence—it is so necessary to examine all the circumstances making up the situation in each case—that it must be a rare case of negligence that the court will take from a jury." A judge at his desk, whose duties seclude him very much, and train him to habits of careful deliberation, is not nearly so competent to determine what a man of the usual and ordinary prudence might do under given circumstances as a jury from the body of the people. Contributory negligence

as a defense, must be quite obvious to all reasonable minds to warrant its announcement as matter of law. This is very thoroughly established by the authorities cited in the brief of counsel for appellant. Especially note 2 Shear. & R. Neg. (5th ed.), p. 830, sec. 477, bearing on situations like that disclosed in this record—of confusion by noises of many engines and numbers of tracks and trains. Under such circumstances it may be that a man of great prudence might err in judgment, though using his utmost and most wary attention. But the statute prohibiting the running of trains more than six miles an hour in cities, etc., was enacted to protect against "the known imprudence of the many who need protection against themselves." *Railroad Co.* v. *McGowan*, 62 Miss., 698; 52 Am. Rep., 205; *Railway Co.* v. *Carter*, 77 Miss., 517; 27 South., 993. This in no way impinges on the doctrine that contributory negligence may, in palpable cases, defeat recovery, and defeat it as matter of law. The question now is as to what may be taken from the province of the jury. Much stronger cases have been held to be within the exclusive province of that constitutional body. *Downing* v. *Steamship Co.* (La.), 29 South., 207; *Lampkin* v. *McCormick* (La.), 29 South., 953 (83 Am. St. Rep., 245); *Law* v. *Railway Co.* (Tex. Civ. App.), 67 S. W., 1025. The case of *Railroad Co.* v. *Crockett*, 78 Miss., 412 (29 South., 162), in no degree militates against this view. We hold this now: That, regardless of whether this plaintiff was a trespasser or a licensee, or properly where he was, it was recklessness tantamount to wilfulness for a railroad company, running its train in flagrant violation of law as to speed and as to signals, to run, in open daytime, on a man with back to the engineer, in the heart of a city, and in a much frequented part of it. *Railway Co.* v. *Carter*, 77 Miss., 511 (27 South., 93); *Railroad Co.* v. *Van Steinburg*, 17 Mich., 117; *Morgan* v. *Railroad Co.* (Mo. Supp.), 60 S. W., 195; *Railway Co.* v. *Lee*, 92 Ala., 271 (9 South., 230); *Railroad Co.* v. *Brown*, 77 Miss., 342 (28 South.,

949). In such situations there should be a careful lookout and close observance of all the precautions.

*Reversed and remanded.*