MARY HOPSON v. KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY.

1. RAILROADS. *Crossings. Highways. Duty of traveler.*

It is incumbent upon a traveler on a highway, when approaching and about to cross a railroad track, to use that degree of care and caution rendered necessary by a reasonable regard for his safety under the surrounding circumstances, and to use all reasonable precautions to inform himself of the approach of a train.

2. SAME. *Question of fact. Contributory negligence.*

Whether a traveler approaching and about to cross a railroad track is required to "stop and listen" or whether a less degree of care will suffice to relieve him from the imputation of contributory negligence is generally, but not invariably, a question of fact to be submitted to a jury.

FROM the circuit court of Marshall county.

HON. JAMES B. BOOTHE, Judge.

Mrs. Hopson, the appellant, was the plaintiff in the court below; the railroad company, the appellee, was the defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*Smith & Totten,* for appellant.

As a matter of law, was the action of the deceased in going upon the railroad crossing, without first having "stopped and looked and listened," such contributory negligence as forbids recovery in this case? We say *not.* This court does not follow

the rigid rule on this subject announced by some other courts. What constitutes negligence depends always upon the surrounding facts and circumstances. *Louisville, etc., R. R. Co.* v. *Crominarity,* 86 Miss., 464 (s.c., 38 South. Rep., 633).

We respectfully invite the attention of the court to the facts that the deceased had just unloaded his staves at the stave pile near the south end of the sidetrack—a distance of about one hundred yards south of the depot, and about one hundred and fifty yards south of the crossing, the place of the accident; that at this stave pile he had a view down the railroad track, south, a distance of about three hundred yards; that, after leaving the stave pile on his return trip, the main line of the railroad was put out of his view by the trees on the side of the railroad, the Callahan store, and the cars banked on the sidetrack. So it appears that from the stave pile to the railroad crossing it was but a short drive of one hundred and fifty yards, and the deceased had just left this stave pile—where he could see for a distance of three hundred yards down the railroad, in the direction from which the train came that struck him—and no train was then in sight, no whistle had been blown at the milepost. He drove from the stave pile in a trot and reached the crossing, where he could not have seen the train if he had attempted to look. So to have stopped to look, under these circumstances, would have been absolutely useless, as the proof shows conclusively; for, on account of the obstructions mentioned, he could not have seen the train from this crossing until he had actually gotten upon the main line of the railroad.

The time consumed by deceased in coming from the stave pile to the crossing could have been, of course, at the most only a few seconds; so the fact is, it had been only a few moments since he had been at a place where he had a view of the railroad, and could listen as well as see, and had not seen or heard the approach of any train. With the present knowledge of these facts and the situation, and in view of all the surrounding circumstances, can

it be said that the fact of deceased's not stopping and looking and listening at the crossing, where he could not possibly see, was negligence? To hold such would be to place upon the deceased, we submit, a higher degree of care than any court has heretofore placed upon a person similarly situated. Why, only a few moments had elapsed since he had had a view down the railroad track, and he neither saw nor heard a train; is it strange, then, that he did not expect to come, in so short a time, in contact with a train coming from that direction? Could he not reasonably act upon his knowledge of the situation of only a moment since? Could he imagine that the train would slip up on him in this remarkably short period? And we submit that if the crew in charge of this train had observed the statutory requirements regarding speed and the giving of proper signals on approaching crossings, the death for which damages are here claimed would not have occurred. But the facts are: This train —a passenger train—was approaching this crossing at the rate of forty miles per hour (covering a distance of one mile in one and one-half minutes), yet giving no signals of its approach; that it came—silently, as it were— immediately out of space, emerging as a veritable cannon ball, and ran against deceased when he had not the least idea of either its approach or presence, but, on the contrary, taking into account his former knowledge of the situation, had every reason to believe that he was perfectly safe from possible or probable harm so far as the railroad was concerned— that the blow fell upon him like a stroke of lightning from a cloudless sky. And thus the unlawful speed of the train, the absence of the signals required by law of trains running through incorporated towns and approaching public crossings, and the obstruction to the view caused by the banking of the cars on the sidetrack became the proximate cause of the injury and constitute the grossest negligence on the part of the railroad company. It was to prevent accidents of this character that the statute prohibiting trains from running through incorporated towns over

six miles per hour, under penalty, was enacted.　*Vicksburg, etc., Railroad Co.* v. *McGowan,* 62 Miss., 698; *Stevens* v. *Railroad Co.,* 81 Miss., 207 (s.c., 32 South. Rep., 311); *Railroad Co.* v. *Carter,* 77 Miss., 517 (s.c., 27 South. Rep., 993).

The deceased came to his death by an injury inflicted by the running of the train.　This is a *prima facie* proof of negligence; and to overcome this statutory presumption, it devolves upon the appellee to exculpate itself by establishing such circumstances as would excuse it from liability.　This it has not done.　The statutory requirement cannot be overthrown by conjecture; and if the proof leaves the circumstances of the accident doubtful, the company is not relieved from liability, and the presumption controls.　*New Orleans, etc., R. R. Co.* v. *Brooks,* 85 Miss., 269 (s.c., 38 South. Rep., 40).

The gross negligence of the railroad company in running a train through an incorporated town, and over a public street and the most frequented street in the town, at the high rate of speed of forty miles an hour, neither blowing the whistle nor ringing the bell continuously, as required by law, was gross negligence *per se;* and when we add to it the negligent manner in which it had banked its cars on the sidetrack, thus cutting off from the traveling public the view of the main line, except the small opening of about sixteen feet at the crossing—a condition of things of which the railroad company is bound to be held to know—the negligence of the company is intensified to that of the grossest known to the law.　And in comparison with this, the negligence of the deceased, if any, is insignificant indeed.

"So many questions are integrated into the solution of the question of negligence, and it is so necessary to examine all the circumstances making up the situation in each case, that it must be a rare case of negligence which the court should take from the jury."　*Bell* v. *Southern Ry. Co.,* 30 South. Rep., 821, Ante 234; *Stevens* v. *Railroad Co., supra.*

We submit that this is not one of the rare cases referred to,

and that the court erred in excluding the evidence from the jury and granting the peremptory instruction in this case.

*J. W. Buchanan,* for appellee.

In the case of *Jobe* v. *Railroad Co.,* 71 Miss., 740 (s.c., 15 South. Rep., 219), the court say: "The attentive exercise of sight and hearing would have warned the victim of his own folly in attempting to cross the track in front of an approaching train, and the calamity which befell him would have been averted if he had heeded the warning of his senses.    The railroad company was negligent—palpably, grossly negligent; but, negligent as was the company, no hurt would have come to appellant if he himself had not also been palpably, grossly negligent.   His failure to use that care and caution which his dangerous situation demanded, that great care and most watchful circumspection which the greater perils of an obstructed view of the track required of him, was the efficient cause of his lamentable injury. If men will go heedlessly on railroad tracks, not using care and caution commensurate with the apparent danger, and disaster shall overtake them, the consequence must fall upon their own heads."

That was a parallel case to the one at bar; but we also call the court's attention to the cases of *Collins* v. *Railroad Co.,* 77 Miss., 855 (s.c., 27 South. Rep., 837), and *Railroad Co.* v. *McLeod,* 78 Miss., 342 (s.c., 29 South. Rep., 76).    In the latter case this court decided in favor of the railroad company, and, in rendering the decision, used the following language: "In such cases the negligence of the railroad company in not sounding an alarm for the crossing cannot avail to condone the lack of ordinary care by the party injured.   On plain principles, the verdict below was unwarranted, and the motion for a new trial should have been sustained."

In the case of *Railroad Co.* v. *Eakin,* 79 Miss., 738 (s.c., 31 South. Rep., 414), this court, in reversing the case, said: "Where

their road goes over a railway or under its trestle, they should exercise ordinary prudence to ascertain whether trains are moving. This is a requirement for safety at all times on approaching crossings, and especially so where sight or hearing is obstructed. *Howell* v. *Railroad Co.,* 75 Miss., 250 (s.c., 21 South. Rep., 746)."

It is a well-settled principle of law in this state that in cases of injury inflicted upon persons by trains running at a rate of over six miles an hour within the corporate limits of a city or town, the defense of contributory negligence is available, and a recovery cannot be had for such injury if such persons' own negligence contributed to the same.

The testimony given for the appellant clearly shows the negligence of the deceased in not stopping, looking, and listening, before attempting to cross the track of appellee, under the conditions then surrounding the same. The testimony clearly shows that everybody else present could, and did, hear the train—the noise from the running of the train—and that by the exercise of ordinary care the deceased could have heard it; and if he did hear it, he foolishly and recklessly attempted to beat it to the crossing.

CALHOON, J., delivered the opinion of the court.

Appellant, as the sister and only heir of Bozeman Westmoreland, brought this action against the railroad company for damages for his death, alleged to have been caused by the negligence of said company. The track runs north and south. A sidetrack, parallel with the main line, was, at the place of the accident, located very close to it; so that when one crossed the sidetrack he was right on the main line. This sidetrack at the time of the accident was filled with freight cars; so that, at the place of the crossing, there was no view whatever of the main line, north or south. In order to cross as the deceased did, driving his two-horse wagon, he had to pass through an opening left for that pur-

pose between the freight cars, and this opening was only sixteen feet wide.    In addition to the obstruction of the view by the long line of freight cars, there were a store house and some trees. This crossing is the main crossing of Potts Camp, an incorporated town.    Deceased was engaged in hauling staves from the west side of the track and depositing them on the east side.    He had unloaded his staves on the east side, and had driven along the main street of the town toward the opening between the freight cars, with the purpose of crossing the track, and, standing up in his wagon and driving along this public street, he turned into the crossing to go west, when he was killed by a train coming from the south.   This train blew one signal one mile south of this incorporated town, it being a stop signal, and then came on at the rate of forty miles per hour through the town.    If it had been running at the statutory rate of speed, six miles per hour, it is perfectly manifest that this accident could not have occurred.    After the blowing of the stop signal, there was no whistle blowing or bell ringing, as the statute requires.    At the place where the staves were unloaded on the right of way, there was an unobstructed view of the track for a distance of three hundred yards; and when the deceased drove his team off on his return trip, there was no train to be seen, and from that point he had only about one hundred yards to go to reach the crossing where he was killed.    This crossing was the main thoroughfare of the town, and practically the only crossing for the track.    When he drove up to the crossing, when he got to the sidetrack, he slackened his speed, as the team was in the act of crossing the sidetrack between the freight cars, to go on the main line, and then, while the team were in the opening between the freight cars, he tapped them up a little, and the next instant was struck by the train and killed.

It will be seen that, inasmuch as the court gave a peremptory instruction to find for the defendant, the only question in this case on the facts is whether, as a matter of law, the action of the

deceased was such negligence as would defeat recovery. It is the rule that questions of contributory negligence and proximate cause must be left to the jury, unless they are perfectly obvious to the court. In the case of *Vicksburg & Meridian R. R. Co. v. McGowan,* 62 Miss., 698 (52 Am. St. Rep., 205), Judge Camp-bell, speaking for the court, said: "So people are in the habit of crossing and going along railroad tracks, oftentimes most imprudently. The statute prohibiting rapid running in cities, towns, and villages, was designed to protect life and property, because of the known imprudence of many who need protection against themselves. Knowing that the statute prohibits the running of a train at a greater speed than six miles an hour in a town, one may, in crossing or in walking on the track, assume that the law will not be violated; but as it may be, and often is, he who undertakes to make a perilous journey across or along railroad tracks is bound to be on the alert for coming trains, and cannot hold the company responsible for what he might avoid by ordinary caution. He is not to be pronounced guilty of contributory negligence merely for being on the track, where he should not be, but inquiry is to be made as to the time, place, circumstances, and as to his conduct, in view of the negligence complained of, in order to determine whether he was wanting in that care the absence of which constitutes contributory negligence preventing recovery. What is reasonable care in any case depends upon the peculiar circumstances of that case." We heartily approve this view. It will be seen that the deceased was in no sense a trespasser in the case before us. In *Railway Co. v. Carter,* 77 Miss., 516 (27 South. Rep., 993), the court, through Whitfield, C. J., held that the question of liability depended on whether the speed and omission of duty on the part of the company were the proximate cause of the injury. It seems to us that these causes, on the peculiar circumstances of the record, should be left to the jury.

In *Wooten v. Railroad Co.,* 79 Miss., 36 (29 South. Rep., 61),

in considering whether the company was liable for damages to a
person who boarded a train in motion, this court said: "We
recognize it to be the general rule, and approve of it as wise and
wholesome, that to board a train in motion is negligence as a
matter of law, so as to bar recovery for resulting damages; but
this rule has its exceptions, and cases arise where the question
should be left to the jury, and we think this record discloses such
a case.   In truth, where it is a passenger who attempts to get off
or on a slowly-moving train, the instances are rare where the
court should take the case from the jury, and it should be done,
in the case of a passenger, only where the rashness in the act so
appears that a verdict for him ought not to be sustained.   No
fixed and invariable rule can be announced, since each case must
depend on its own facts."   And it is further said, in 79 Miss.,
37 (29 South. Rep., 62) : "It is common observation that passen-
gers, under stress of time, will get on and off of moving trains.
Say what we will as to its prudence as an abstract question, it is
human nature, and it is negligence in a railroad company to have
a baggage truck so near the cars after the train begins to move;
and, but for the truck, it is fair and reasonable to presume that
the catastrophe would not have occurred."   In *Stevens* v. *Rail-
road Co.,* 81 Miss., 206 (32 South. Rep., 311), the court held:
"One sharp blow of the whistle would, no doubt, have prevented
any casualty.   The speed of the train which struck him is put
by one witness at the rate of from ten to fifteen miles an hour,
by another at twelve miles an hour, and a fair deduction from
the testimony of the plaintiff himself would put it at from
twenty to twenty-two miles an hour—and this, as we have said,
in a very populous neighborhood, in the heart of the city, in a
place frequented by the people.   If the train which did
the damage to this man had been going at the lawful rate of
speed, six miles an hour, it is plain that the catastrophe would
not have occurred, because, by the time the train could have
gotten to him, he would have been at an entirely safe place.   He

had the right to suppose, and did suppose, that the south-bound train was not traveling faster than the limit prescribed by law, in which case he was in no sort of danger."

In *Railroad, etc., Co.* v. *Brooks,* 85 Miss., 269 (38 South. Rep., 40), this court said, through Judge TRULY: "There is yet another principle of law, well settled in this state, which required the submission of the case to the jury.    It was shown beyond peradventure that the injury was inflicted by the running of the train.    This was *prima facie* proof of negligence, authorizing a recovery by plaintiff.    To overcome this statutory presumption, it devolved upon the appellant to exculpate itself by establishing, to the satisfaction of the jury, such circumstances of excuse as would relieve it from liability.    But this statutory presumption cannot be overthrown by conjecture."    In the case of *Louisville, etc., R. R. Co.* v. *Crominarity,* 38 South. Rep., 634, the court, through Judge TRULY, said: "The proposition presented by the appellant, upon which hangs its chief argument, seeking to have the conduct of appellee condemned as being such contributory negligence as should absolutely preclude any recovery, is that the appellee, in approaching the crossing where the injury occurred, did not bring his horse to an absolute halt before driving onto the track.    Many decisions and a multitude of authorities are cited to show that other courts have held that the mere failure to stop before driving onto a railroad crossing constitutes, as a matter of law, such negligence as forbids recovery for any injury inflicted by a passing train.    We decline to adopt any such rigid rule.    What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance.    No hard-and-fast rule of action can be prescribed which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless.    Instances may be imagined when to stop before driving onto a track would be hazardous in the extreme; in other cases driving upon a railroad track without stopping would be in

no degree negligent; so, too, it must be conceded that there are many cases where to drive upon a crossing without first stopping would be negligence of the grossest character.   Due caution in one instance might well be deemed, under different circumstances, foolhardiness.   The true rule is that it is incumbent upon the traveler to use that degree of care and caution which is rendered necessary by a reasonable regard for his safety under the peculiar circumstances and conditions by which he is at the time confronted.   It is the duty of a traveler in approaching a crossing to use all reasonable precaution to apprise himself of the approach of a train, but whether that reasonable precaution will demand that he shall 'stop and look and listen,' or whether any lesser degree of care on his part will be sufficient, must generally, though not invariably, be a question of fact; and, being a question of fact, it should be submitted to the jury, under proper instructions, for their decision."

From the foregoing references it is to be deduced that, under circumstances like those in this case, the court should have left it to the jury, under proper instructions, to say whether there was or was not such negligence as to defeat recovery.   Laws are made for men as they are, and it is the jury which should determine whether the acts were or were not reasonably prudent. The leaving of the freight cars only sixteen feet apart for the passage of vehicles over the main track, and the stacking up of freight cars and the knowledge of their obstructing the view, and the failure to ring the bell or blow the whistle as the law requires, were acts, in combination, of the grossest negligence, particularly where the crossing is the main thoroughfare of a town.   Whether or not a reasonably prudent man—having, almost immediately before he went between the freight cars, seen that the track was clear for three hundred yards—would have done as the deceased did, is a matter for the judgment of the jury, and not of the court.   In *Bell* v. *Southern Ry. Co.,* 30 South. Rep., 821, Ante

234, WHITFIELD, C. J., said: "It must be a rare case of negligence which the court should take from a jury."

*Reversed and remanded.*