VICKSBURG AND MERIDIAN RAILROAD COMPANY *v.* NAT. McGOWAN.

1. RAILROAD COMPANY. *Running faster than six miles per hour. Injury to individual. Section 1047, Code 1880.*

Section 1047 of the Code of 1880 provides that "any railroad company having the right of way may run locomotives and cars by steam through towns, cities, and villages at the rate of six miles an hour and no more; and if, in passing through any town, city, or village, any locomotive or car should be run at a greater rate of speed the company shall pay one hundred dollars, to be recovered by suit in the name of such town, city, or village, and for its use; and the company shall, moreover, be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town, or village." In an action by an individual for damages for an injury inflicted by a railroad company while violating this statute, it is error for the court to give for the plaintiff, without restriction, qualification, or explanation, an instruction in the language of the statute, (omitting the clause prescribing a penalty recoverable by a city, town, or village), because such

instruction is calculated to mislead the jury and deprive the defendant, contrary to the purpose of the statute, of the defense of contributory negligence on the part of the plaintiff.

2. STATUTE.  *Instruction in language of.  Practice.*
Where the language of a statute, if literally construed, would not express the thought and spirit of the law, it is error for the court, in instructing a jury as to such law, to give a charge exclusively in the language of the statute.

3. RAILROAD COMPANY.  *Section 1047, Code 1880, construed.  Right of action for individual injury.*
The provision in the statute above quoted, relating to injury to an individual, was not intended to abrogate the common-law rule that one cannot recover on account of the negligence of another if by reasonable care he could have avoided injury from it, but rather to preclude the idea that the penalty recoverable by the town, city, or village for a violation of the statute is exclusive of the right of an individual to redress for injury sustained at the time of such violation.

4. SAME.  *Violation of ₴ 1047, Code 1880.  Nature of liability for injury inflicted.*
A violation of the statute referred to does not impose upon a railroad company an absolute liability for an individual injury inflicted at the time thereof, but is merely negligence entitling the injured party to recover damages, provided he has not been guilty of contributory negligence.

5. CONTRIBUTORY NEGLIGENCE.  *Definition.*
Contributory negligence is the want of ordinary care to avoid injury from the act of another.

6. SAME.  *Person injured on company's track.  When guilty of contributory negligence.*
It is not contributory negligence, *per se*, for a person receiving an injury from the negligence of a railroad company to be on the railroad track at a place where he has no right to be; and he may be guilty of such negligence though he be at a place on the railroad where he may lawfully be, as at a crossing.  If in either situation the person neglect to use ordinary and reasonable care, considering the time, place, and circumstances, to avoid the injury, he is guilty of contributory negligence.

7. NEGLIGENCE.  *Recovery for by trespasser.  Effect of contributory negligence.*
One may be technically a trespasser and yet recover for an injury resulting from the wrongful act of another, if he has used due care to avoid the injury, or one may not be a trespasser and yet be guilty of such contributory negligence as to preclude him from recovering.

8. SAME.  *How affected by contributory negligence.  Reason of rule.*
One who, in any circumstances, contributes directly to his own injury by a failure to exercise the ordinary care which would have saved him from harm

from the negligence of another, is denied the right to recover damages of that other, because the law will not undertake to apportion the blame between parties mutually in fault.

9. EVIDENCE. *Action against railroad company. Inadmissible declaration of engineer.*
In an action for damages by one who has been injured by the running of a railroad locomotive it is error to permit a witness to testify that he heard the engineer who was in charge of the locomotive when the plaintiff was hurt say, about seven minutes after the accident, "How in the hell could a drunken man see a drunken man?" Such testimony is inadmissible, either as evidence of a declaration or admission of an employee of the defendant company, or to impeach the engineer as a witness by contradicting him on such immaterial matter.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

On the 15th of May, 1884, Nat. McGowan, while crossing or walking along the track of the Vicksburg and Meridian Railroad in the town of Edwards, was struck by a moving locomotive and received from the collision serious bodily injuries. On the 8th of July, 1884, he sued the railroad company for damages.

At the trial, B. H. Payne, the engineer by whom the locomotive was being operated at the time of the accident, testified as a witness for the defendant, and on cross-examination was asked by the plaintiff's attorney: "Did you say in the presence of William Boone and others at the depot, after the accident, 'How can a drunken man see a drunken man?'" in answer to which question he replied, "I did not." William Boone testified as a witness for the plaintiff, and, in his examination-in-chief was permitted to state, over the objection of the defendant's attorney, that Payne, talking to a "crowd" with whom the witness was standing, "about seven minutes after the accident," said, "How in the hell could a drunken man see a drunken man?"

The court gave for the plaintiff the following instructions:

"1. The jury are instructed that if they believe from the evidence that plaintiff was walking on defendant's railroad track in the town of Edwards, and while doing so defendant's agent negligently, and while running defendant's engine, in defendant's employ, at a greater rate of speed than six miles per hour, struck and hurt

plaintiff with such engine, then the jury must find for plaintiff and assess such damages as were sustained by him by the injury received, unless plaintiff's conduct was such as contributed to the result and of which a man of ordinary prudence would not have been guilty.

" 2. If the jury believe from the evidence that the plaintiff was passing over defendant's railroad track on a public or other crossing, in the town of Edwards, and while there defendant's agent, while in its employ and while running defendant's engine at a greater rate of speed than six miles per hour, negligently struck plaintiff with such engine, then the jury should find for plaintiff and assess his damages.

" 3. The jury are instructed that ' in all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company is *primâ facie* evidence of the want of reasonable skill and care on the part of the servants of such company in reference to such injury.'

" 4. The jury are instructed that the law is as follows : ' Any railroad company having the right of way may run locomotives and cars by steam through towns, cities, and villages at the rate of six miles an hour and no more, and if, in passing through any town, city, or village, any locomotive or cars should be run at a greater rate of speed,  *   *   *   the company shall be liable for any damage or injury which may be sustained by any one from such locomotive or cars which they are running at a greater speed than six miles an hour through any city, town, or village.' "

The court refused to give for the defendant two instructions asked in the following language :

" 2. A person walking on or being upon the track of a railroad at a point other than a crossing is a trespasser, and if the point be a crossing and he is there upon the track engaged in any other act than simply crossing the road, he is then also a trespasser and contributes proximately by his own negligent and unlawful act to any accident which may befall him while there.  And if the jury believe from the evidence that the plaintiff was on the track of the

defendant at a point other than a crossing or engaged in any other act than crossing the road, they must find for the defendant.

" 4. The jury are instructed that laws regulating the running of railroads, such as provide for the ringing the bell and rate of speed, etc., cannot be invoked by a person walking laterally upon the track of the road at a place other than a crossing, or upon it in the direction of the track at any point."

The jury rendered a verdict in favor of the plaintiff for four thousand dollars, and from the judgment thereon the defendant appealed.

*Nugent & McWillie,* for the appellant.

1. It was not proper in this case to allow William Boone to testify to what the company's engineer said after the accident. This statement could in no point of view be part of the *res gestœ*, and related only to the physical condition of the engineer at the time. The idea was to prove that this employee of the company was drunk at the time of the accident, and that as a deduction from the declaration, " How in the hell could a drunken man see a drunken man ?" Of course, this scrap of testimony was sufficient for the jury. Its effect was very damaging to the company, and was not overcome by any after evidence adduced in the case.

The general rule on this question of evidence is this : " When the act or omission of an agent would bind the principal in relation to the subject-matter in controversy, then his statements and admissions in reference thereto will also bind the principal if made at the same time the act is done or omitted to be done, so as to connect itself therewith and become a part of the *res gestœ*. To be admissible as evidence against the principal such statements and admissions must be in the nature of original ones, and must not only be made during the continuance of the agency or service, but in regard to a transaction pending or transpiring at the very time. Subsequent statements or admissions, made by way of relating the occurrence or of account for the same are not admissible in evidence against the principal." 1 Rorer on Railroads 660, 662, 668, 669, 727, 728 ; *Adams* v. *Hannibal and St. Jo Ry. Co.,* 7 Am. & Eng. Ry. Cases 416 ; *Toledo and W. Ry. Co.* v. *Goddard,* 28 Ind.

185 ; *Chicago, etc., Ry. Co.* v. *Riddle*, 60 Ill. 534 ; *Kroner* v. *State*, 61 Miss. 158 ; *Meek* v. *Berry*, 7 Geo. 190.

2. The general rule with regard to concurrent negligence is that the party seeking redress must not only show his adversary to be in the wrong, but must also prove that no negligence of his own tended to increase or consummate the injury. To prevent a recovery the plaintiff's negligence must proximately contribute to the injury. If the sole immediate cause of the injury were the defendant's negligence, the plaintiff can recover, notwithstanding previous negligence of his own. *Miss. Cent. Ry. Co.* v. *Mason*, 51 Miss. 234 ; *Dowell* v. *Ry. Co.*, 61 Miss. 519. The principle on which it rests is that if the plaintiff, suing for an injury, has in any manner by his own wrong, negligence, or want of ordinary and reasonable care, directly, that is proximately, contributed to the injury complained of he cannot recover. The plaintiff must show affirmatively that he used ordinary care—that degree of care which might reasonably be expected from a person in his situation. The negligence of the plaintiff to preclude him from a recovery must be such as that he could, by ordinary care, have avoided the consequences of the defendant's negligence. One person being in fault will not dispense with another's using ordinary care for himself. 2 Rorer on Railroads 1019, 1023.

Now in this case there was no such proof. Indeed, the case as made showed that the plaintiff was of himself directly responsible for his own undoing. He had no right to be upon the railroad track, either walking along or otherwise, except at a crossing, and then only in crossing. The track is the private property of the corporation. It is not built to be walked on, and the fact that it may have been used to walk on, however frequently and commonly, will not change the law in this respect. 2 Rorer on Railroads 1027.

As said in *Isabel* v. *Railway Co.*, 9 Am. Ry. Rep. 265, the track is private property, and, except in the case of crossing highways, persons have no right to be upon it. The company is entitled to a clear track, and it is not to be presumed that persons will be on it when they have no right to be there. In order to make a defend-

ant liable for an injury where the plaintiff has also been negligent or in fault, it should appear that the proximate cause of the injury was the omission of the defendant, after becoming aware of the danger to which the plaintiff was exposed, to use the proper degree of care to avoid injuring him.   60 Mo. 475.

The plaintiff could not recover merely upon the theory that the engine was going at a rate of speed more than six miles an hour.   The omission of the railroad company to comply with the statute does not make it absolutely liable for an injury to one at a crossing when the signals are omitted, but only when the injury was caused without the contributory negligence of the person injured.   In other words, when the injury results from the omission, is caused by it alone, the railroad company is liable, but not if caused by the negligence of the injured person.  The effect of the statute is to superadd a duty upon the corporation the disregard of which avails the injured party no otherwise than its omitting any common-law duty in respect to care in running the train. *Stever* v. *Oswego, etc., R. R. Co.,* 18 N. Y. 422 ; *Havens* v. *Erie R. R. Co.,* 41 Ib. 296 ; *Wilcox* v. *Rome, etc., R. R. Co.,* 39 Ib. 358 ; *Reynolds* v. *Hindman,* 32 Iowa 146 ; *Artz* v. *Chicago, etc., R. R. Co.,* 5 Am. Ry. R. 473.

In the case of *Indianapolis, etc., R. R. Co.* v. *Blackman,* 7 Am. Ry. Rep. 56, a similar statute was construed, and there, as here, the court instructed the jury that the mere failure to ring the bell or sound the whistle or slacken the speed was willful negligence and would entitle the plaintiff to recover.   But an instruction was given also for the defendant that the mere non-performance of their duties would not make the company liable if their performance would not have prevented the injury.   Commenting on this the Supreme Court of Illinois say : "These instructions were in direct opposition.   What could the jury do ?   They must select between them, and they probably acted upon the first instruction.   This was not the law, and was in violation of the statute.   It provides that the corporation shall be liable for any damages sustained by reason of the neglect to perform the duty imposed, and not that it shall be liable for the mere non-performance.   The injury must be the result of the omission, and this must be found by the jury."

In *Stoneman* v. *The Atlantic, etc., R. R. Co.*, 9 Am. Ry. Rep. 44, an instruction like that under consideration was condemned, the Supreme Court of Missouri saying : " The court had no right to declare, as a matter of law, that the jury had nothing to find but the killing of an animal at a crossing of a public highway and the failure of the company to have the bell rung or the whistle sounded.    There may have been no connection whatever between the negligent omissions and the damage, and the very terms of the statute under which the suit was brought clearly indicate that the damages must be the result of the negligence."    55 Mo. 483.

Precisely the same view is taken by the Supreme Court of Ohio of a statute akin to ours, and the conclusion adopted that the omission of the company to ring the bell or sound the whistle near the crossing of a highway does not relieve the person who is about to cross over the highway from the obligation of employing his sense of hearing and seeing to ascertain whether a train is approaching. *C. C. C. and I. Ry. Co.* v. *Elliott*, 14 Am. Ry. Rep. 123.    So also in New York.    *Wilcox* v. *Rome, etc., Ry. Co.*, 39 N. Y. 358.

In *B. and O. Ry. Co.* v. *Maryland*, 4 Am. and Eng. Ry. Cases 579, the Supreme Court of Maryland use this language where the statute was relied upon to relieve the plaintiff from the consequences of his own folly : " The uncontroverted evidence in the case proves that the deceased was improperly on the track of defendant, that he voluntarily exposed himself to the peril with full knowledge of the risk, and might, if he had used his eyes and ears, have heard and seen the approaching train long before it struck him, thus directly contributing to his own death."    See *Butterfield* v. *R. R. Co.*, 10 Allen 532 ; *Harlan* v. *R. R. Co.*, 64 Mo. 480 ; *R. R. Co.* v. *Hummell*, 44 Pa. St. 375 ; *Finlayson* v. *R. R. Co.*, 1 Dill. 579.

*W. L. Nugent*, of counsel for the appellant, argued the case orally.

*W. A. Montgomery*, for the appellee.

Whilst we rely upon the statute, § 1047 of the Code of 1880, we contend that the finding of the jury should not be disturbed even though there were no such statute.    Negligence is always a

question for the jury, unless the facts are undisputed, and the result of those facts unquestionable as proving or disproving negligence.   If the facts are conceded and the inference is doubtful, it should be a question for the jury, and not for the court.   This court has announced the rule in *Mississippi Central R. R. Co.* v. *Mason*, 51 Miss. 234.   The record here shows the fact to be that the appellee was, just before the accident occurred, walking over appellant's railroad at a place used as a thoroughfare for footmen, in the town of Edwards, going from his place of business to his home.   He had a right to be there, and if not then contributing by his own negligence to the injury received the appellants are liable, notwithstanding § 1047 of Code of 1880.

If there in the commission of any other act than crossing the engineer *should* have seen him, for, if not a public crossing, if persons were in the habit of crossing the track here the engineer and " servants of the company were bound to take notice of the fact and use a precaution commensurate with it." *H. and St. J. R. R. Co.* v. *Mary Brown*, 50 Mo. 461.

The Supreme Court of Missouri, in the case above cited, say : " Railroad companies are under the same obligations with other persons to use their own property so as not to hurt or injure others, and though a person be injured while unlawfully on their track, or contribute to the injury by his own carelessness or negligence, yet if the injury might have been avoided by the use of ordinary care and caution by the railroad company they are liable in damages for that injury."   Why may we not invoke the same humane rule in Mississippi ?

The object of the statute, § 1047 of the code, is to compel the companies to confine themselves to such speed within towns and cities that they can readily check their engines upon the sudden appearance of any obstruction.   *N. O. R. R. Co.* v. *Toulmé*, 59 Miss. 288.

*Catchings & Dabney*, on the same side.

It certainly was the right of plaintiff to show that the engineer in charge of the train was drunk when the accident occurred.   The engineer had been asked in effect on examination if he was not so,

and he answered "No" in effect.    He was then asked if he had not said, in the language used by Boone, he was, or had at the time been, drunk, and he answered "No."    Then was it not legitimate and proper to prove in rebuttal that he *had* said as Boone testified? Unquestionably, it was a material fact if the engineer was drunk while running the train.    He testifies that he was not drunk. Evidence is then introduced in rebuttal that he made statements out of court in conflict with his testimony.

We think, however, that the declaration would have been admissible as part of the *res gestœ.*

While conceding the proper force and effect of the authorities cited for appellant, we think that by them and the recognized law governing in such cases this declaration would have been admissible as original evidence.

The court will note that the declaration does not purport to state facts which had transpired and passed.    The engineer was still the engineer of the train.    There had elapsed but seven minutes.    If he was drunk seven minutes *before,* he was drunk *then.*    He was but declaring his condition—a condition which still existed.    The very statement in its nature indicated that it came from a drunken man.    It was a verbal act.    In other words, the *character* of the statement under the circumstances, whether true or false in the abstract, was evidence of his condition.

The instructions asked and given for plaintiff for the purpose of placing the claim upon indisputable ground were much more liberal to defendant than might and probably ought to have been asked and given.

In plaintiff's first instruction the jury are required not only to believe that the engine was running over six miles an hour, but that the defendant *negligently* struck him, and in addition to this it provides, "unless plaintiff's conduct was such as contributed to the result, and of which a man of ordinary prudence would not have been guilty."

This instruction is given to cover the case if the jury should believe that plaintiff was walking on the track.

The second instruction is the same as the first as to the law if

the jury believe that plaintiff was going over a crossing, the proviso being omitted.    Both instructions make the *negligence* of defendant necessary to plaintiff's recovery in addition to the rate of speed.

The third instruction for plaintiff is a literal copy of § 1059. Objection to that, we presume, will not receive serious consideration.

The same is true of the fourth, it being a copy of § 1047, an immaterial portion being omitted.

The idea was in preparing the instructions to recognize that there might be cases where a recovery could not be had, although the engine was running more than six miles per hour.    We do not undertake to say what construction should be placed on the statute in an extreme case, though a great deal could be said in support of the liability of the company in *any* case.

It appears plainly that this statute is but the exercise by the legislature of its police power, which it can do constitutionally.    *M. and O. R. R. Co.* v. *State*, 51 Miss. 137.

The defendant's second and fourth instructions were properly refused, as they announce in effect that § 1047 is without force and should be ignored.    If the court had given these instructions or either of them it would have undertaken to repeal the statute or disregard it.

This statute has received consideration by this court in three cases.

In *V. and M. R. R. Co.* v. *Hart*, 61 Miss. 471, the court decided that, notwithstanding errors in the case, since it appeared that the mule was killed in the city of Jackson, and that the train was running over six miles per hour, plaintiff was entitled to recover. This was in the face of the fact that defendant otherwise was not guilty of negligence.

In *Dowell* v. *V. and M. R. R. Co.*, 61 Miss. 531, this court decides that an employee of the company cannot invoke or claim the benefit of the statute.    The reasons given for this decision are so forcible that no lawyer would hesitate to accept the conclusion as correct.

The third of the cases is *New Orleans R. R. Co.* v. *Toulmé*, 59 Miss. 287.   The court say: "The object of the statute is to compel

the companies to confine themselves to such speed within towns and cities that they can readily check their engines upon the sudden appearance of any obstruction."   *   *   *

"Railroad companies in running their trains through incorporated towns act at their peril in exceeding the speed prescribed."

*M. Dabney,* of counsel for the appellee, argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

We find no fault with the action of the circuit court in granting the first three instructions for the plaintiff below and in refusing the second and fourth asked by the defendant. The fourth instruction for the plaintiff is "that the law is as follows," and then copies literally § 1047 of the Code of 1880, omitting so much of it as prescribes a penalty recoverable by city, town, or village. The instruction is in the language of the statute, as stated, and the court instructed for the defendant that if any negligence on the part of the plaintiff was the proximate cause of the accident he should not recover, even if there was negligence on the part of the defendant. We thus have an announcement in the fourth instruction for the plaintiff of the absolute liability of the defendant for all damage done while the locomotive was running more than six miles an hour in the village of Edwards, and in other instructions that if the plaintiff by his own conduct contributed proximately to his hurt he should not recover. These propositions are contradictory and must have been confusing to the jury. It is manifest that the learned judge of the circuit court did not hold the view that the statute creates an absolute and unconditional liability by a railroad company for all damage done whilst the locomotive is running at a greater speed than six miles an hour in a town. His action in giving the defendant the full benefit of the doctrine of contributory negligence shows clearly his view to be that the statute does not create an absolute liability, and that although the statute may have been violated, the plaintiff could not recover if he contributed proximately to his own misfortune. But while the judge had the correct view, he gave for the plaintiff an instruction, the fourth, in the language of the statute, without qualification, restriction, or

explanation, and thus presented the jury the alternative of applying the statute in its letter or the doctrine of contributory negligence, as admitted by the court to be applicable if the facts existed. The statute literally declares an absolute liability by a railroad company for any injury done while it is being violated, without regard to the conduct of the person injured. It is difficult to believe that the legislature intended to prescribe such a rule and thus to abrogate, without an express declaration to that effect, the well-settled rule of the common law that one cannot recover for the negligence of another if by reasonable care he could have avoided injury from it. We rather think that the purpose of the legislature in declaring the liability for damages " which may be sustained by any one from such locomotive or cars whilst they are running at a greater rate of speed than six miles an hour through any city, town, or village " was, out of abundant caution, to exclude the contention that the penalty recoverable by the town was exclusive of the right to civil redress by the citizen. That part of the statute is merely declaratory of liability to individuals for damages or injury " which any one may sustain from such locomotive or cars whilst, etc." It was not intended to make it a part of the penalty of the statute that in addition to what the town might recover any one who was damaged or injured, even by his own recklessness, by a locomotive or cars while they were running more than six miles an hour in a town might recover. Had the legislature intended to make a change in the law as well understood so radical as this, it is a just supposition that it would have plainly declared that contributory negligence in such cases should not be a defense.

We hold the law to be that, even where a railroad company violates the statute under consideration, one who could by the exercise of ordinary care avoid injury from the act of the company cannot recover for such injury.

There is in the books much confusion on the subject of contributory negligence. The principle on which the doctrine rests is that the plaintiff cannot recover for the negligence of another if, by ordinary care, he could have avoided injury from such negligence. Contributory negligence is the want of ordinary care to avoid

injury from the act of another.  One must use due diligence or ordinary care to avoid injury from another, failing in which he may not recover for what by such diligence or care he might have avoided.  Whether in any case the plaintiff used the requisite care to avoid injury depends on the circumstances in which he was called on to act.

One who contributes directly to his own injury, by a failure to exercise the ordinary care which would have saved him from harm from the negligence of another, is denied the right to recover, because the law will not undertake to apportion the blame between parties mutually in fault.

In this case the plaintiff was on the track of the defendant when he was struck by a locomotive and injured.  Although he may have been improperly on the track where he was, and although the defendant may have been a wrongdoer by violating the statute as to the rate of speed, the plaintiff is not entitled to recover if, notwithstanding the wrong of the defendant, he could by ordinary care have avoided injury from the act of the defendant.  The railroad company had the right to a clear track, and the plaintiff, in walking on it as he did, was bound to know he was in danger and to be on the lookout to escape harm from his perilous situation.  He had the right to assume that, while the company had the right to a clear track it would conform to the law forbidding a greater rate of speed there than six miles an hour, but the company had the right to assume that its track was clear or that any one on it would get off on the approach of a locomotive.  Therefore, the fact that the plaintiff was on the track, where he should not have been, and that the defendant violated the law as to the rate of speed or otherwise, if such is the fact as to both parties, is not decisive of the question of right in the plaintiff and liability on the defendant.  That is to be determined by considering whether, notwithstanding the wrong of the plaintiff in being where he was and the wrong of the defendant in disregarding the law, if such be the case, at the time, in the place, and under the circumstances, the plaintiff, by the ordinary care applicable to such time, place, and circumstances, could have avoided injury from the wrong of the defendant.  If he could, he

should not recover, and this is what we understand to be meant by contributory negligence. "One person's being in fault will not dispense with another's using ordinary care for himself."

It is not contributory negligence *per se* to be on a railroad track at a place where the person has no right to be. A person's being there is a condition but for which injury could not be done him by the locomotive or cars, but his being there is not what constitutes contributory negligence. Being there at such a time and under such circumstances as may be shown, or failing to use his senses as becomes him, and to act under the circumstances with ordinary care and caution to avoid harm may constitute contributory negligence, which will prevent recovery. One has no right to walk on a railroad track at a place other than a crossing, but whether his being on the track not at a crossing is contributory negligence depends on circumstances. One may be guilty of contributory negligence at a crossing or where he has a right to be. The criterion is whether he observes due care, under the circumstances of his situation, whatever it may be, to avoid harm from the act complained of. One may be technically a trespasser, and if he uses due care to avoid injury from the wrongful act of another he may recover ; and he may not be a trespasser and yet be guilty of such contributory negligence as to preclude him from recovering. It seems that this is the view held by the court below, but in applying it to the case, it is probable that the jury was misled by the fourth instruction for the plaintiff, given in the language of the statute, without qualification or explanation, and which, taken literally, as we have stated, conveys the idea of absolute liability on the part of the railroad company which violates it for any injury suffered while it is thus acting. It may appear strange that an instruction in the very language of a statute should be disapproved, but it is not always safe to rely on the letter of the law. It may be so used as to mislead. "The letter killeth."

The thought expressed in a statute is the important matter, and, if the mere language of a statute is so used as to express a thought or convey an idea not intended by the law, it is as erroneous as any other form of error. There is little doubt that the fourth in-

struction for the plaintiff enabled the jury to conclude that, for an injury done while the locomotive was running more than six miles an hour, the defendant was liable, without regard to the conduct of the plaintiff or the circumstances under which the injury occurred. It is true that by other instructions the jury was told that the plaintiff should not recover if his conduct was a proximate cause of the injury, even if the defendant was guilty of negligence. But the vice in the instructions is that the jury was not distinctly informed that violation of the statute was merely negligence; and if the company was guilty of negligence and thereby hurt the plaintiff, he could recover, unless he was wanting in ordinary care to avoid injury from the negligence complained of. The difficulty which forbids approval of the instructions as a whole is that they convey the thought that negligence and violating the statute are different and distinct things, whereas our view is that violating the statute is negligence, and for its consequence the company is responsible, unless it is freed from liability by the contributory negligence of the person complaining. A railroad company violates the statute at its peril, and must respond for any damages done in such wrong doing, and must bear the burden of exculpating itself from liability in such case, as in others, but if it shall appear that the plaintiff failed in the degree of care which, under the circumstances, it was incumbent on him to observe to avoid injury, he cannot recover. The instructions for the plaintiff make a distinction between negligence and running over six miles an hour in the town, and thus mislead. They embrace the thought of a right to recover if the locomotive was running more than six miles an hour.

The true view is that the statute was passed for the protection of life and property with reference to the known danger to both in cities, towns, and villages from the rapid motion of locomotives and cars, and that a railroad company whose servants disregard the statute must answer for all injuries done by locomotives or cars thus employed in wrong doing, unless it is shown that the party complaining directly contributed to the occurrence of the injury by his own failure to observe the ordinary care and caution due in his situation. Domestic animals are permitted to run at large in

villages, and are often found on the track of the railroad. Their owners know that trains are prohibited from running in town or village at a greater rate of speed than six miles an hour, and that at such a rate there is comparatively little danger to them. They have a right to rely on the assumption that the law will not be violated, and to act on such reliance in permitting their animals to go at large, and, for any injury to them by a railroad company in violating the statute, to recover damages unaffected by the fact that but for the animal being at large no injury could have been suffered by it.

So people are in the habit of crossing and going along railroads, oftentimes most imprudently. The statute prohibiting rapid running in cities, towns, and villages was designed to protect life and property because of the known imprudence of many who need protection against themselves. Knowing that a train is prohibited from being run at a greater speed than six miles an hour in town, one may, in crossing or in walking on the track, assume that the law will not be violated, but as it may be, and often is, he who undertakes to make a perilous journey across or along a railroad is bound to be on the alert for coming trains and cannot hold the company responsible for what he might avoid by ordinary caution. He is not to be pronounced guilty of contributory negligence merely for being on the railroad, where he should not be, but inquiry is to be made as to the time, place, and circumstances, and as to his conduct, in view of the negligence complained of, in order to determine whether he was wanting in that care the absence of which constitutes contributory negligence preventing recovery. " What is reasonable care in any case depends upon the particular circumstances of that case."

The court below erred in permitting the testimony as to what the engineer, Payne, said some time after the accident to go to the jury. It was not admissible in any point of view. As a declaration or admission of an employee of the defendant, made some time after the occurrence, it was not competent evidence ; and as an effort to impeach Payne, by contradicting him on this immaterial matter, it was not admissible. 1 Wharton on Evidence, § 551; 2 Ib., § 1174.

This case is not within any recognized exception to the rule which denies to one who on cross-examination asks as to an immaterial or collateral matter the right to contradict the answer he gets.

The plaintiff was enabled by the testimony thus illegally admitted to get before the jury the idea that the engineer was drunk, which must have been very hurtful to the defendant, and was probably quite sufficient to determine the verdict.

For this error, and because of the probability that the jury was misled by the instructions, *we reverse the judgment and remand the case for a new trial.*