MISSISSIPPI CENT. R. CO. *v.* PACE.

[68 South. 926.]

1. RAILROADS. *Operation. Action for injury. Sufficiency of evidence. Speed in cities. "Through." "Within."*

Where plaintiff was invited by persons in charge of one of defendants locomotives to ride on the locomotive and at the request of the fireman, fired the engine and after doing so sat down in the cab, whereupon the locomotive, while running at a speed in excess of six miles an hour within an incorporated city came in violent contact with a string of cars and by reason of the shock caused by the collision, plaintiff was thrown out of the cab and injured, the jury was warranted in finding that the proximate cause of the injury was the unlawful speed of the locomotive.

2. RAILROADS. *Operation. Speed in cities. Through. "In." "Within."*

Under Code 1906, section 4043, making railroad companies liable for injury caused by running its locomotive at more than six miles an hour through any city and conferring on the railroad commission the power to fix limits in cities in which railroads might run locomotives at a greater rate of speed, the word "through" is synonymous with "in" or "within," so as to cover a case of injury from a locomotive switching cars in a railroad's private yard within the corporate limits of a city.

3. RAILROADS. *Operation. Speed. Right to recover.*

That plaintiff was a trespasser or a licensee did not in any way affect his right to recover, if the locomotive was running more than six miles per hour, and the excessive speed was the proximate cause of the injury.

APPEAL from the circuit court of Lamar county.

HON. A. E. WEATHERSBY, Judge.

Suit by John Pace, by next friend, against the Mississippi Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*H. S. Buescher,* for appellant.

Appellee contends that he is entitled to a recovery in this case because the proximate cause of the injury was the speed of the train in violation of section 4043, chapter 118, Code of 1906, which reads in part as follows: "Any railroad company having the right-of-way may run locomotives and cars by steam through cities, towns and villages, at the rate of six miles an hour and no more; and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village." And further bases his contention on the authority of *Railway Company* v. *Carter,* reported in 77 Miss. 516, where the court, interpreting this statute, speaking through WHITFIELD, C. J., says:

"On the other hand the general doctrine that the company is not liable to a trespasser except for wilful, wanton or reckless wrong is not applicable and cannot be invoked where a trespasser is injured by a train running more than six miles an hour in an incorporated town, the excessive speed being the proximate cause of the injury. The statute was enacted to prevent the running of trains at a rate of speed exceeding six miles an hour through incorporated towns for the protection of persons and property whether the persons are trespassers or not. To make the statute applicable only where the injury was wilfully, wantonly or recklessly inflicted would be judicial legislation."

Appellant contends that section 4043, chapter 118, Code of 1906, has no application to the facts of the case at bar, and that *Railway Company* v. *Carter,* 77 Miss. 516, does not apply. What are the facts as shown by the evidence?

It is undisputed that it was a violation of the railroad company's rules for anyone not an employee to ride on the engines. It is, therefore immaterial as far

as this case is concerned, whether he was riding on this engine with or without the consent of the employees of the railroad company, as the testimony shows that the employees had no authority to give their consent. His *status* as a trespasser, or at most a licensee, is therefore, beyond dispute.

If a trespasser, the only duty which the railroad company owed him was not to wantonly or wilfully injure him after discovering his peril. *Ingram-Day Lumber Co.* v. *Harvey,* 98 Miss. 11, 53 So. 347; *Fuller* v. *I. C. R. R. Co.,* 100 Miss. 705, 56 So. 783.

If a licensee, the settled rule is that a licensee takes his license subject to its concomitant perils, and the licensor owes him no duty except to refrain from wilfully or wantonly injuring him. 3 Elliot on Railroads, page 1951, sec. 1250; Pollock on Torts (Webb Edition 1894), pps. 639, 640, 641; *M. & O. R. R.* v. *Stroud,* 64 Miss. 784.

Overruling appellant's motion to exclude the testimony of appellee and instruct the jury to find for appellant, made at the close of appellees testimony, as set out in the third assignment of errors, and refusing to give the peremptory instruction to find for appellant, asked at the close of all of the testimony, as set out in the fourth assignment of errors, and the giving of instructions Nos. 1, 2, 3 and 4 for appellee, (hereto attached for ready reference), as set out in the fifth assignment of errors, and the refusal to give instructions Nos. 1, 2, 3, 4, and 5 requested by appellant (also attached hereto), as set out in the sixth assignment of errors, was done on the theory that the running of the train, in violation of the statute, constituted such a wanton and wilful infliction of an injury as would entitle appellee, a trespasser or licensee, to recover.

Appellant contends that this is not the law under the facts of this case, because. First, the statute referred to applies only to trains running through cities, towns

and villages, and therefore does not apply to a switch engine running in the railroad company's switch yards; and second, it applies only to the general public on the ground on or about the railroad company's tracks and not to employees, passengers, trespassers, etc., on the trains of the railroad company.

The statute was evidently enacted to regulate the speed of through trains running through a town. Such is its clear meaning and no other reasonable interpretation can be given it. "Any railroad company having the right-of-way may run locomotives and cars by steam through cities, towns and villages, at the rate of six miles an hour and no more; and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village."

The statute is plain, unambiguous, absolute and positive. It is its own interpreter and the court must enforce it as written. *"Ita lex scripta est."*

To hold, therefore, that the statute says trains running in the city limits when the statute says trains running through, would also be judicial legislation.

In *Mobile & Ohio Railroad Co.* v. *State,* 51 Miss. 137, the court says: "It is within the power of the legislature to regulate the speed of trains while passing through cities and towns."

In the case of *I. C. R. R.* v. *Sumrall,* 96 Miss. 860, 51 So. 545, Justice WHITFIELD, in construing the six mile an hour statute, says: "That it was negligence for a railroad company to run its train faster than six miles an hour through an incorporated village or town."

The statute, therefore, manifestly does not apply to a switch engine operating in the switch yards of the railroad company. Engines engaged in switching service generally perform their work in the railroad company's yards, located on its private property, from which the general public is usually excluded.

*S. E. Travis,* for appellant.

Counsel insist that the word "through" does not always mean from side to side and end to end. This is admitted. This would give the term elasticity enough to include general operations in Natchez and Hatties-burg, which counsel say would be excluded by a literal interpretation of the statute. But this admission in no way supports counsel's contention. The primary meaning of this term "through" is always and everywhere "from side to side and end to end." The text of Cyc. says: "Through. From end to end, or from side to side of; into or out of at the opposite, or at another point; between the side walls of; within; from one side to the opposite side; from one surface or limit to the other surface or limit." 38 Cyc. 301.

Webster's New International says: "1. From end to end of, or from side to side of; from one surface or limit of, to the opposite; into at one point and out of at the opposite, or at another, point; as to bore through a board; a bullet passed through his hat." "2. From the beginning to the end of; to the end or conclusion of; during; as through life; through the year."

It cannot, therefore, be maintained in the light of these definitions of the term "through" in this statute, designed for the protection of the public in cities, etc., against the consequences of running trains through them at a rate of speed in excess of six miles per hour, that the statute applies to private yards, switches and trains, separated from depots, crossings, etc., and in no way concerning or affecting the public. The term surely applies only to trains passing through or into cities, etc., and affecting at least some portion of the public; and the statute must be so construed to uphold it. Once make the term elastic enough to include private places and private operations where the public interest and the public good are not involved and you destroy the reason, the basis, for the law.

The authorities elsewhere support the principles here contended for. See in this connection the following: It has been held that where a city ordinance limits the rate of speed of trains "while passing through said city," it should be construed as applying only to trains passing through the city and not to the movement of cars and engines in the yard or station grounds while making up trains. *Green* v. *Deleware, etc, Canal Co.,* 38 Hun. (N. Y.), 51.

A city ordinance, limiting the speed of railway trains to four miles an hour, is void as to a portion of a railway, which although within the city limits, runs several miles through fenced agricultural lands not thickly inhabited." *Meyers* v. *R. I. and P. R. R. Co.,* 42 Am. 50.

In *State, New Jersey R. & Transp. Co., Prosecutor,* v. *Jersey City,* 29 N. J. L. 170, it was held that the charter power to regulate the speed of railway trains did not authorize such regulations, except where the railroad crossed the streets or public grounds.

An ordinance requiring lookouts within the city limits does not apply to a desolate, uninhabited part of the city where there are no crossings. *Baltimore & O. R. Co.* v. *State,* 50 Am. Rep. 233.

Nor does a statute requiring a lookout on the rear car of every freight train apply to work trains. *Bacon* v. *N. Y., N. H. & H. R. Co.,* 80 N. E. 458.

"The charter of the city of Birmingham empowered the common council of such city 'to regulate and control the running of engines and cars through the city, and the rate of speed of the same.' Pursuant to this authority the common council passed an ordinance providing that 'no railroad company or corporation whose track passes through or within the limits of the city shall run any locomotive while passing through the said city at a greater rate of speed than ten miles per hour,' under penalty of twenty five dollars for each offense. Held, that the ordinance was not intended to apply

to engines used by the companies in moving cars and making up trains at places within their own yards, and in and about their own stations, which were not within the limits of any public street or thoroughfare." *Green* v. *Delaware & H. Canal Co.*, 38 Hun. 51.

"The running of a train through the streets of a city, at a speed prohibited under a penalty, is not *per se* evidence of negligence, in an action for an injury from collision, and does not of itself affect the right of recovery." *Brown* v. *Buffalo & S. L. R. Co.*, 22 N. Y. 191; *Elizabethtown, L. & B. S. R. Co.* v. *Beam*, 10 Ky. L. R. 682; *L. & N. R. R. Co.* v. *Redmon's Adm'x.*, 28 Ky. L. R. 1293; *Railroad Co.* v. *Dalton* (Ky.), 43 S. W. 431; *Dolfinger* v. *Fishback*, 12 Bush, 474." See, also, *William* v. *R. R. Co.*, 11 S. R. A. (Old Series) 352 & Cons. cited; *Ward's Adm'r* v. *I. C. R. R. Co.*, 56 S. W. 807.

We, therefore, respectfully submit that the six mile statute has no application, and that the cause should be reversed and dismissed.

*Cassedy & Cassedy,* for appellee.

The appellee contends that the only question in the case is whether the excessive rate or speed was the proximate cause of the injury, if so the liability is absolute, and as this question has been passed on by the jury under proper instructions of the court their finding on this issue is conclusive.

In *Railroad Company* v. *Toulme*, 59 Miss. 248, it is said: "Railroad companies, in running their trains through incorporated towns, act at their peril in exceeding the speed prescribed, and are liable for all damages resulting from such excess of speed, whether it be done while such speed is maintained or by reason of it having been maintained, it has become impossible to check the train in time to avoid collisions."

In *Railroad Company* v. *Watson*, 39 So. 70, it is said: "To an action for injuries to the person inflicted by a train running at an unlawful rate of speed within the limits of a municipality only two defenses are possible; the liability being absolute unless it appears that the unlawful rate of speed was not the proximate cause of the injury or that the person injured was himself guilty of negligence contributing proximately to the injury.

In *Railroad Company* v. *Carter*, 77 Miss. 511, it is said: "Mere excessive speed will not entitle ·plaintiff to recover, unless it be the proximate cause. But if it be the proximate cause, the mere fact of plaintiff being a trespasser does not disentitle him to recovery. If plaintiff be a trespasser, and guilty of contributory negligence, he is barred, whether trespasser or not, by that contributory negligence, unless the injury be wilfully, wantonly or recklessly inflicted." There are many other cases to the same effect. Thus it appears that under the law as it stood prior to the enactment of chapter 135 of the Laws of 1910, the only defenses were contributory negligence, or that the excessive speed was not the proximate cause of the injury. Since the enactment of chapter 135 of the Laws of 1910, abolishing contributory negligence as a defense there remains but one answer to injuries inflicted whilst running at a rate of speed in excess of six miles per hour in the corporate limits, and that is that the excessive speed was not the proximate cause of the injury.

The issue therefore as to the proximate cause of the injury having been clearly submitted to the jury and they having found as a matter of fact that the violation of the statute was the proximate cause of the injury, their finding upon this issue is conclusive of the plaintiff's right to recover.

That these questions are for the jury and their finding is conclusive is definitely and firmly established by

the adjudicated cases in this state. *Jones* v. *Railroad*, 75 Miss. 97; *Stevens* v. *Railroad Co.*, 81 Miss. 207; *Leake* v. *Railroad Co.*, 91 Miss. 398.

Appellant contends: First, "the statute . . . applies only to trains running through cities, towns and villages and therefore does not apply to a switch engine running in the railroad company's switch yards; second, it applies only to the general public on the ground on or about the railroad company's tracks and not to employees, passengers, trespassers etc., on the trains of the Railroad Company."

Appellant's first contention. The case relied on by appellant shows it to be without merit and counsel in his brief in attempting to show the nonapplicability of the statute demonstrates that the purpose of the statute was to protect persons who might be injured by the operation of switch engines or terminal trains. Counsel say: "The statute looks to the public safety, it may be invoked by a person injured at a crossing or by a person working of necessity around depots or a licensee upon the tracks."

Taking this statement of counsel to be correct as to the purpose of the statute and the motives of the legislature which prompted its enactment, it is seen to be designed to protect all classes of persons from all injuries which may be inflicted by all locomotives operating within municipalities in excess of six miles per hour. In view of the well-known practice of railroad companies to operate their switch engines in and around depots and public crossings it cannot be consistently argued that the legislature limited the operation of the statute to trains running through municipalities and excluded from its terms injuries inflicted by switch engines operating in the same localities and over the same crossings. The same reasons which apply to through trains apply to switch engines and terminal locomotives.

Moreover if the construction contended for by appellant should be adopted, all injuries inflicted by trains at terminal stations by reason of excessive speed would be without the statute while injuries inflicted at other stations under similar conditions and circumstances would be within the statute. Such a construction would relieve the Mississippi Central Railroad Company from injuries inflicted by its passenger or through freight trains within the terminal cities of Natchez and Hattiesburg. The Gulf & Ship Island Railroad Company from injuries inflicted by its passenger and through freight trains within the terminal stations at Gulfport, Laurel and Jackson, and the Alabama & Vicksburg Railway from injuries inflicted by its passenger and through freight trains within its terminal stations at Meridian and Vicksburg, although these injuries may be proximately caused by such trains being operated at a rate of speed in excess of six miles per hour. It is to be assumed that the legislature had these conditions in view when the statute was adopted

In *Mobile & Ohio Railroad Co.* v. *State,* 51 Miss. 137, it is stated: "The object of the statute is to protect the life and property of the general public while engaged on the tracks of the railroad company, either at public crossings or elsewhere," including within its terms all locomotives.

In *New Orleans Railroad Co.* v. *Toulme,* 59 Miss. 288, it is said: "The object of the statute is to compel the companies to confine themselves to such speed within towns and cities that they can readily check their engines upon the sudden appearance of any obstruction, etc." Thus construing the statute to apply to all locomotives within a municipality.

In *Railroad Company* v. *McGowan,* 62 Miss. 697, the court said: "The true view is that the statute was passed for the protection of life and property with reference to the known danger to both in cities and towns and villages from the rapid motion of locomotives and cars."

It is unnecessary to pursuse this discussion further. The statute is plain, unambiguous and its purpose obvious. It applies to all locomotives and engines operating within municipalities whether switch engines, through trains or trains entering terminal stations. "Through" does not always mean from end to end or side to side, but frequently means simply, "within". 8 Words & Phrases, 6767.

COOK, J., delivered the opinion of the court.

Plaintiff below, appellee here, recovered judgment for injuries received because of appellant's violation of section 4043, Code 1906. This section provides that:

"The company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village."

The evidence for plaintiff shows that plaintiff was invited by the persons in charge of one of defendant's locomotives to ride on the locomotive; that, at the request of the fireman, he fired the engine, and, after doing so, he sat down in the cab, whereupon the locomotive, while running at a speed in excess of six miles per hour, came in violent contact with a string of cars, and by reason of the shock caused by the collision of the locomotive with the string of cars he was thrown out of the cab and injured.

Taking plaintiff's evidence as true, the jury was warranted in finding that the proximate cause of his injury was the unlawful speed of the locomotive. The hurt was inflicted while the locomotive was running within the corporate limits of the city of Hattiesburg. It was claimed below, and is claimed here, that the six-mile statute does not operate in the circumstances of this case. It appears that the locomotive was switching cars in what is termed by counsel the "private yard"

of the railroad company, and that, while it is admitted that the locomotive was running within the city limits, it is contended, and the evidence tends to prove, that it was not running "through" the city in the literal sense. In other words, it is the position of appellant that the statute does not come into play upon locomotive and cars, unless they are at the time running "through" or from end to end of the city.

In *New Orleans Railroad Co.* v. *Toulme,* 59 Miss. 288, and in *Railroad Company* v. *McGowan,* 62 Miss. 697, 52 Am. Rep. 205, this court treated the word "through," as used in the statute, as a synonym of "within" and "in," and, while the court in neither of these cases had in mind the point raised here, we think nevertheless a correct interpretation was given to the language of the statute. Besides, taking section 4043 as a whole, it is manifest that the narrow construction insisted upon by appellant cannot be maintained. The last clause of the section expressly confers upon the Railroad Commission the "power to fix and prescribe limits in cities, towns and villages in which railroad companies may run locomotives and cars by steam at a greater rate than six miles per hour." The italicized words in the quotation from the statute, *"in which,"* express the legislative intent to construe the word "through" as meaning the same thing as "in" or "within."

The power conferred upon the Railroad Commission to prescribe limits wherein railroad companies may exceed the speed limit fixed in the fore part of the statute clearly indicates that the six-mile statute would be in force in every part of the city except the prescribed limits.

We think, in the matter of instructions, defendant received more than its just share, and instruction. No. 5 given for plaintiff brought the law more nearly into proper proportion.

That plaintiff was a trespasser or a licensee did not in any affect his right to recover, if the locomotive was running more than six miles per hour, and the excessive speed was the proximate cause of his injury. *Railroad Company* v. *Carter,* 77 Miss. 511, 27 So. 993; *Howell* v. *Railroad,* 75 Miss. 249, 21 So. 746, 36 L. R. A. 545; *Railroad Company* v. *Metcalf,* 84 Miss. 242, 36 So. 259.

After considering all of appellant's assignments of error, we are unable to find anything in the record which could justify a reversal.

*Affirmed.*