ALLEN, Chief Judge.
The appellant as plaintiff in the lower court brought an action against the Atlantic Coast Line Railroad Company and H. D. Anderson (engineer of the train) for damages resulting from the death of her husband caused by his automobile being struck by a train at the intersection of Cypress Street with the railroad in Arcadia on December 31, 1957. Mr. Jones, the decedent, was driving west on Cypress Street, which runs east and west, and the train was proceeding south. The complaint alleged that the railroad employees negligently operated the train at a speed in excess of twenty miles per hour; failed to give warning of the approach of the train to the crossing; failed to keep a lookout at the crossing; and as a direct and proximate result of such negligence, the plaintiff’s husband was killed.
The defendants admitted the collision, denied any negligence, and averred that the plaintiff’s husband’s death was caused solely by his own negligence in failing to look out for the train and failing to use his sense of hearing and take other caution as he approached the crossing.
At the trial the plaintiff made out a prima facie case and rested. The defendants then introduced evidence of the details of the accident and the defendants followed with rebuttal evidence. The jury returned a verdict for the defendants and after plaintiff’s motion for a new trial was denied, final judgment for the defendants was entered. Thereafter plaintiff took this appeal.
On December 31, 1957, ACL train no. 231, consisting of nine cars, caboose and engine, en route from Lakeland to Fort Myers, entered Arcadia at approximately 8:00 a. m. The train stopped at the Shell Gas Plant in Arcadia to drop off a car. This stop was a distance of 2,345 feet from the site of the accident. The train then proceeded in a southerly direction towards Cypress Street at a speed of approximately 20 miles per hour.
There are no speed restrictions divulged by the record unless Florida Statutes, § 351.03, F.S.A., which provides that a train shall not run through a traveled street in a city or town at a rate exceeding 12 miles per hour, is applicable. There was evidence introduced which indicated that De-Soto Avenue, which runs parallel to the railroad, is a traveled street. The appellant offered in evidence an ordinance of Arcadia denoted as Section 521, Designation of Certain Streets and Avenues, which provided:
“The street through which the Atlantic Coast Line Railway track is constructed in the City of Arcadia, Florida, shall be and the same is hereby named and designated DeSoto Avenue. Those streets running in said City parallel to DeSoto Avenue shall be and are hereby named and designated as follows; * * *”
The purpose of the appellant being to show that the railroad was running through a traveled street, to-wit: DeSoto Avenue, and thus section 351.03, F.S.A., was applicable. The lower court rejected the proffer of the ordinance and the propriety of the court’s rejection of the ordinance is one of the questions involved on this appeal.
*236 There is testimony that states the whistle was blown as the train approached the intersection and that the headlight of the train was on. The conductor, J. P. Thompson, testified that the whistle was blown much stronger just prior to the collision. The fireman, C. L. Cox, was seated in the cab of the engine immediately behind Johnson, the brakeman. Cox stated that the train was 80-100 feet from the crossing when he first saw decedent’s car. At this distance, Cox stated that you can only see 100 feet eastward down Cypress Street. Cox estimated the speed of decedent’s vehicle at 20 to 25 miles per hour. Cox also stated that he did not warn the engineer when he first observed the car and it was after he called a warning to the engineer that the whistle was changed to a loud density.
Leroy Johnson, the brakeman, testified that the bell was ringing and the whistle blowing “in plenty of time for anybody to hear it.” Johnson was riding on the left hand side of the engine cab in the brakeman’s seat. Johnson stated when the car came from behind some trees where he could see it, the train was 70 to 90 feet from the crossing; that the decedent was travel-ling at approximately 35 miles per hour; and that when he realized the decedent was not going to stop, both Johnson and Cox yelled for the engineer to apply the emergency brake.
Henry Dewey Anderson, the engineer, testified that he did not look at the speedometer but estimated his speed at 16 to 20 miles per hour; that his first warning was when the brakeman and the fireman yelled to apply the emergency brake; and that at that point, he was 15 to 18 feet from the intersection.
The approximate time of the accident was 8:15 a. m. and the day was cool and clear and dry.
Some witnesses testified that the train was travelling in excess of 20 miles per hour and that they did not hear the whistle. Matilda Landress stated that the train was running 25 to 30 miles per hour; that it was going faster than usual; and that she did not hear the whistle at all although she heard the impact. Mrs. R. L. Hill had just crossed the tracks and she stated that she did not hear the whistle at all. W. R. Lan-dress testified that the whistle and the impact were “pretty close.”
The decedent, Claude Jones, was the sole occupant and driver of the vehicle involved. He was 67 years of age and born and reared in Arcadia. He wore a hearing aid which was on and operating at the time of the accident. When the ambulance driver Fred Grady, picked up Mr. Jones, Grady stated that the hearing aid was in Jones’ ear and making a squeaking noise. Jones’ widow stated that Jones could hear normal conversation “clear across the room” when using his hearing aid.
The appellant objects to certain charges given by the court but since the record shows that at the trial of the case no objections were made to the charges of the court; and pursuant to Rule 2.6(b), F.R.C.P., 31 F.S.A., we shall not consider any question involving objections to charges that were not made during the trial below.
The appellant states under point V of her brief that:
“Reversible error was committed by the trial court in rejecting the prof-erred evidence of plaintiff described in paragraphs 5 and 7 of the assignments of errors.”
Paragraph 7 relates to the refusal of the court to permit proffered testimony of an officer concerning tests made by him of the speed that the Atlantic Coast Line trains reach from a standing start. We find no error in-the court’s rejection of this testimony.
. The appellant also argues under point V that the court erred in refusing to admit in evidence a certified copy of Section 521 of the ordinance of the City of *237 Arcadia, which ordinance, in effect, provides that the street through which the Atlantic Coast Line track is constructed in the City of Arcadia, Florida, shall be, and the same is, hereby named and designated DeSoto Avenue. It is apparent that the purpose of the original ordinance sought to be introduced from the subject of the ordinance “Designation of Certain Streets and Avenues,” was to name certain streets in Arcadia. The purpose of the appellant, however, as we have previously stated, was to show that the Atlantic Coast Line train ran through DeSoto Avenue and was subject to the speed restrictions of Florida Statutes, § 351.03, F.S.A., which provides in part:
“ * * * and their trains shall not go faster, through any of the traveled streets of a city or town, than at the rate of twelve miles per hour. * * *»
We hold that under the facts of this particular case neither the proffered ordinance nor the quoted part of Section 351.03 were material or applicable and therefore the lower court committed no error in his ruling.
The photographs of the place where this unfortunate collision took place between the train of the defendant and the car driven by the deceased, show that the collision occurred at the intersection of the railroad tracks with Cypress Street. De-Soto Avenue, along which avenue the railroad was apparently built, is shown from the photographs as running parallel with the railroad tracks and it is this part of the street that is traveled upon by the public,
The appellant requested the following charge:
“I charge you that Section 351.03 of Florida Statutes, in effect when this accident occurred, reads in part as follows:
“ '351.03. * * * and their trains shall not go faster, through any of the traveled streets of a city or town, than at the rate of 12 miles per hour * ifc * > ft
which charge was rejected by the trial judge. The error vel non of the lower court would be based on the meaning of the words “through any of the traveled streets of a city or town.” It is contended by the appellant that DeSoto Avenue in the City of Arcadia, which runs parallel with the tracks of the defendant railroad and which street was crossed by the deceased prior to crossing the railroad tracks, was a street through which the railroad ran. The defendant railroad contended below and in this court that the statute was not applicable since the railroad tracks were not upon said street.
In the case of Seaboard Air Line Ry. v. Tomberlin, 70 Fla. 435, 70 So. 437, 438, the Supreme Court said:
“ * * * There was no evidence of the existence of an ordinance of Plant City limiting the speed of trains • passing through the town. Section 2841 of the General Statutes of 1906, prescribing the speed of trains passing through ‘any of the traveled streets of a city,’ applies only to the traveled streets of a city upon and through which the track of the railroad is located. The court’s charge that ‘all railroad trains moving through incorporated cities shall move at a rate of speed not to exceed four miles per hour, and to do so is negligence on the part of such railroad company,’ we think was erroneous. It had no application to the facts in this case, and was misleading, in that it conveyed the idea that the duty devolved upon the plaintiff in error to operate the train at such speed when approaching a street crossing under the circumstances of this case. Seaboard Air Line Ry. v. Smith,. 53 Fla. 375, 43 So. 235; Atlantic Coast Line R. Co. v. Wallace, 61 Fla. 93, 54 So. 893.”
In Seaboard Air Line Ry. v. Smith, 53. Fla. 375, 43 So. 235, -238, the Supreme *238 Court passed upon the validity of an ordinance of the City of Lake City, Florida, regulating the speed of trains passing through or in said city. In its opinion, the Court said:
“The grounds of the motion were that the corporation of Lake City possessed no authority under its charter or under the law to make or enforce said ordinance within its corporate limits; the subject being exclusively regulated by the statutes of the state. The contention here of the defendant in error is that the ordinance is merely a police regulation that would not relieve the plaintiff in error from liability. We are referred to no statute in this state which would deprive the city of authority to pass and enforce such an ordinance in its entirety. The only statute which seems to bear upon the question which we have found is section 2264, Rev.St.1892. That section is as follows: ‘Every railroad company whenever its track crosses a highway shall put up large sign boards at or near said crossing with the following inscription in large letters on both sides of the boards, “Look out for the cars.” In all incorporated cities the said company shall cause the bell on the engine to be rung before crossing any of the streets of a city, and their trains shall not go faster through any of the traveled streets of a city than at the rate of four miles per hour.’ It is plain that the first sentence of this section does not apply to the streets of a city, for the subsequent sentence provides the precaution to be used before crossing them, viz., that the engine bell shall be rung. This last sentence in its last clause then provides a speed limit of four miles through the traveled streets of a city. This clause does not seem to be intended to fix a speed limit where a track simply crosses a street, and is not located upon a street. To give it such a construction might, in some instances, make the law unreasonable. We think it was intended to fix the speed limit where a railroad track is located upon a traveled street, where the danger of injury to persons is greatest and where the greatest precautions are necessary. In so far as the ordinance conflicts with the statute, it would, of course, be inoperative. It could not apply to the speed of a train running on a traveled street. * * * ” (Emphasis added.)
In the case of Seaboard Air Line R. Co. v. Bailey, 190 F.2d 812, 816, decided by the United States Court of Appeal, Fifth Circuit, the Court, through Judge Strum, commented upon Section 351.03, Florida Statutes, F.S.A., as follows:
“ ‘ * * * no train shall go through any of the traveled streets within the corporate limits of the City of Wild-wood at a rate of speed faster than four miles per hour.’ (Italics supplied.) As the train here involved was traveling 18 to 25 miles per hour, violation of said ordinance was urged as a circumstance from which negligence might be inferred. (Citations omitted.) The defendant objected to the ordinance as inapplicable and therefore irrelevant, because the railroad tracks in question did not run longitudinally along Oxford Street, but crossed it at right angles, and hence did not run ‘through’ it.
“Sec. 2264, Fla.Rev.St.1892, now sec. 351.03, Fla.St.1949, F.S.A., provides that * * * and their trains shall not go faster, through any of the traveled streets of a city * * * than at the rate of four (now twelve) miles per hour.’ (Italics supplied). It will be noted that the statute and the ordinance are substantially verbatim, so similar, in fact, as to leave little doubt that the ordinance, enacted in 1925, was copied from the statute which was originally enacted in 1874. In 1907 the statute was construed by the Supreme Court of Florida in Seaboard Air Line Ry. v. Smith, 53 Fla. *239 375, 43 So. 235, 238, where that court said of the language here under consideration: 'This clause does not seem to be intended to fix a speed limit where a (railroad) track simply crosses a street, and is not located upon a street * * *. We think it was intended to fix a speed limit where a railroad track is located upon a traveled street, where the danger of injury to persons is greatest and where the greatest precautions are necessary.’ * * *
“When used, as here, as a preposition, the lexicographers define the word 'through’ to mean: 'From end to end of, or from side to side of; from one surface or limit of, to the opposite; into at one point and out at the opposite, or another point.’
* * * * * *
“When the ordinance was adopted in 1925, the council was chargeable with knowledge of the interpretation placed upon the words 'through any of the traveled streets of a city’ in 1907 by the Supreme Court of Florida in construing the statute above mentioned, from which the ordinance is obviously copied. If the council meant ‘across’ the streets of the city, it would have been quite simple to say so.”
The Supreme Court of Mississippi, in the case of Mississippi Cent. R. Co. v. Pace, 109 Miss. 667, 68 So. 926, 927, in construing a statute of that State making a railroad liable for any injury sustained by anyone from a locomotive running at more than six miles per hour through any city, said:
“Taking plaintiff’s evidence as true, the jury was warranted in finding that the proximate cause of his injury was the unlawful speed of the locomotive. The hurt was inflicted while the locomotive was running within the corporate limits of the city of Hattiesburg. It was claimed below, and is claimed here, that the six-mile statute does not operate in the circumstances of this case. It appears that the locomotive was switching cars in what is termed by counsel the ‘private yard’ of the railroad company, and that while it is admitted that the locomotive was running within the city limits, it is contended, and the evidence tends to prove, that it was not running ‘through’ the city in the literal sense. In other words, it is the position of appellant that the statute does not come into play upon locomotive and cars, unless they are at the time running ‘through’ or from end to end of the city.
“In New Orleans, M. & T. Railroad Co. v. Toulme, 59 Miss. 284, 288, and in Vicksburg & M. Railroad Company v. McGowan, 62 Miss. 682, 697, 52 Am.Rep. 205, this court treated the word ‘through,’ as used in the statute, as a synonym of ‘within’ and ‘in,’ and, while the court in neither of these cases had in mind the point raised here, we think nevertheless a correct interpretation was given to the language of the statute. * * * ”
A study of the record in this case convinces the court that the jury had sufficient evidence upon which to base a verdict that the negligence of the deceased was the sole proximate cause of his death. They could easily have found from the evidence that no negligence existed on the part of the defendant railroad and that, therefore, the comparative negligence law did not come into existence. As stated by the Court in Dowling v. Loftin, Fla.1954, 72 So.2d 283, 284:
“Voluminous testimony was taken with reference to the scene of the accident and pertinent facts in connection therewith. No good purpose Can be served by a recital of these details and facts testified to. It is sufficient to say that all questions were submitted to the jury and the jury found a verdict *240 of not guilty. There was abundant substantial evidence supporting the verdict.
“Motion for new trial was denied by the trial judge. The findings of the jury, reviewed by the trial judge, will not be disturbed on appeal when there is any substantial evidence to support the verdict unless the assignments of error pinpoint some error of the trial judge in the instructions to the jury or in admitting, or rejecting, testimony which resulted in a miscarriage of justice.”
See also Atlantic Coast Line Railroad Company v. Timmons, 160 Fla. 754, 36 So.2d 430.
We are of the opinion the case should be and is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.